WESTERN UNION TEL. CO. v. JOSEPH H. BROWN.

(Case No. 1614.)

1. CAUSE OF ACTION — PLEADING. — If the facts set forth as a basis of recovery are the same in an original and an amended petition, though the relief prayed for in the amended pleading be different, on account of a larger measure of relief being asked for, the character of the cause of action remains the same.

2. EVIDENCE OF DAMAGE — VERDICT. — A verdict awarding actual damages should be based on some data showing the amount of damage sustained; thus, where the evidence showed that great pecuniary loss, trouble and mental anxiety had resulted from the act complained of, yet when there was nothing in the evidence by which the specific amount of damage could be determined, a verdict for $6,000 was held to be erroneous.

APPEAL from Tarrant. Tried below before the Hon. A. J. Hood.

On December 4, 1880, Joseph H. Brown, to meet and protect his acceptance for $5,679.93 in favor of Dymond & Gardes, of the city of New Orleans, which matured on the 6th of the same month, procured from the banking house of Tidball, VanZandt & Co., of Fort Worth, "telegraphic exchange" on New Orleans. This he did by receiving from Tidball, VanZandt & Co. the following message:

"FORT WORTH, Texas, 12 — 4, 1880.

" To Louisiana National Bank, New Orleans, La.:

"Protect Joseph H. Brown's note to Dymond & Gardes, due 6th instant.

(Signed)        " TIDBALL, VANZANDT & CO."

On the same day appellee Brown caused the message to be delivered to the receiving clerk of appellant, the Western Union Telegraph Company, at its office in Fort Worth; and, to procure its safe and correct transmission, he caused to be paid to said clerk not only the price demanded to send the message to New Orleans, but also that demanded to have it repeated, as required by the rules and regulations of the company. The clerk was aware of the importance of the message and promised to have the same promptly for-

warded. It was shown that the usual time required to send a message from Fort Worth to New Orleans was about two hours. It never, in fact, reached New Orleans; and, in consequence, the demand of Dymond & Gardes against Brown was duly protested for non-payment; by reason of which Brown claims to have been damaged, and for which this suit is brought.

Appellant Brown, in his original petition, after stating and setting forth his case, concludes with the following final and summary allegation: "And that thereby plaintiff has greatly suffered in mind and feeling and has lost a large sum of money, all by reason of said gross negligence of defendant, to his *great* damage, to wit: the sum of $10,000." But in his prayer he uses the following language: "Wherefore, the premises considered, plaintiff prays . . . that he have judgment for the sum of $100, actual damages sustained by him as aforesaid, being the cost of protest and the amount paid defendant for transmitting said message, and for the further sum of $10,000 exemplary damages, on account of the said gross negligence and conscious indifference of defendant to their responsibilities and to plaintiff's rights in the premises as aforesaid, and for general relief."

Upon trial in the court below, upon the original pleadings, verdict was returned for plaintiff for $4.50 actual damages, and $5,000 exemplary damages. From the judgment rendered on this verdict the defendant, the Western Union Telegraph Company, appealed to this court; and the said judgment was reversed and remanded. See opinion in Western Union Tel. Co. *v.* Brown, 58 Tex., 172.

After the filing of said opinion and the mandate, to wit, on the 30th day of April, 1883, the plaintiff Brown filed his first amended original petition in the case, which was a reproduction of his original petition, save and except plaintiff, in his said amendment, changed the words "*great* damage" to "*actual* damage," and then added the following:

"Plaintiff would further show that said defendant, being as hereinbefore set forth and related, a corporation, acted in the premises by and through its agents and servants; and that the said J. F. Brigance was the agent and operator and manager of the telegraph offices of defendant at the said city of Fort Worth, and it was the said Brigance's duty to forward and transmit said message from said place of Fort Worth, and to see that the same was properly repeated; or, if it was not heard from within a reasonable time, to inquire after the same and to report the non-arrival of the same. That there were divers other agents and operatives and employees

of defendant whose names are unknown to plaintiff, who were in charge of and were employed in the telegraph office of defendant at Dallas, Texas, the next intermediate station to Fort Worth, from which last named place said message should have been again repeated and forwarded; and it was then and there the duty of said agents, operatives and employees at Dallas, to repeat and forward plaintiff's said message; but that both the said Brigance and the said agents, operatives and employees at Dallas, wilfully failed and refused to perform their respective duties in the premises, and were guilty of the gross and wilful negligence and conscious indifference in the matter of sending and transmitting plaintiff's said message in manner and form as hath hereinbefore been set forth and related; yet plaintiff avers that said defendant corporation, after having been fully notified of the gross and wilful negligence and conscious indifference of the said Brigance, and its other agents, operators and employees at Dallas, ratified and adopted their said acts and wrongs, and, after due demand and notification by plaintiff, wholly refused to pay plaintiff any damages whatsoever that he had sustained in the premises, and wholly failed and refused even to repay to him his money, taken by its said servants and agents, as the price of the transmission of said message; but has kept and appropriated the same, and now keeps and withholds the money thus fraudulently obtained from plaintiff, and has covered the same into its treasury, and has not only failed and refused to return said money, but still keeps and retains the said Brigance, and the other said Dallas agents and servants, in its employ without even a reprimand. Wherefore plaintiff says that said defendant is liable to and ought to pay plaintiff the sum of $10,000 as exemplary and punitory damages, in addition to his said actual damages. Therefore plaintiff prays judgment against defendant for $10,000 actual damages, and for the further sum of $10,000 exemplary damages, and for costs," etc.

Appellant on the 8th day of May, 1883, filed its second amended original answer, wherein, after general demurrer, it sets up to first amended original petition, among others, the following exception:

That said petition sets up a cause of action which appears, on its face, to be barred by the statute of limitation. The exception was overruled.

A statement of the facts on which the charge of negligence was based would serve no purpose in view of the points discussed in the opinion.

*Stemmons & Field*, for appellant, on their proposition that there was error in not sustaining exceptions to plaintiff's first amended

original petition, cited: R. S., arts. 3202, 3203, 3204; Jones v. Lewis, 11 Tex., 359; Lewis v. Houston, 11 Tex., 645; Williams v. Randon, 10 Tex., 74; Ayres v. Cayce, 10 Tex., 107; Henderson v. Kissam, 8 Tex., 46; Erskine v. Wilson, 27 Tex., 118; Governor v. Burnett, 27 Tex., 32; Erskine v. Wilson, 20 Tex., 81; Hill v. Clay, 26 Tex., 650; Western Union Telegraph Co. v. Brown, 58 Tex., 170; Hays v. H. & G. N. R. R. Co., 46 Tex., 276; Edelman v. St. Louis Transfer Co., 3 Mo. App., 503; Illinois R. R. Co. v. Hanmer, 72 Ill., 353; Peoria Bridge Association v. Loomis, 20 Ill., 251; Wardrobe v. Stage Co., 7 Cal., 118; Hagan v. Providence R. R., 3 R. I., 38.

They also insisted that the verdict was not sustained by the evidence.

*Ball & McCart*, for appellee, cited, in opposition to appellant's exception to the pleading: Towner v. Sayre, 4 Tex., 28; Fulton v. Craddock, Dallam, 458; Hoggland v. Cothren, 25 Tex., 345; T. & P. R'y Co. v. Durrett, 57 Tex., 48; Sutherland on Damages, vol. 1, p. 770; vol. 3, pp. 260, 645, 659; Shepherd v. Pratt, 16 Kan., 209; 1 Chitty Pl., 395; G., C. & S. Fe R'y Co. v. Levy, 59 Tex., 542; Hays v. H. & G. N. R. R., 46 Tex., 273; Craken v. C. & N. W. R'y Co., 36 Wis., 657; McKinley v. C. & N. W. R'y Co., 44 Ia., 314; Sedgwick's Leading Cases on Damages, pp. 453, 460; W. U. T. Co. v. Brown, 58 Tex., 170; Commercial Bank v. Jones, 18 Tex., 811; Perkins v. Mo. R. R., 55 Mo., 201; Henderson v. R'y Co., 17 Tex., 560; Graham v. Pacific R. R., 66 Mo., 536; Goddard v. Grand, 57 Me., 202–223.

Counsel filed a written argument to sustain the verdict on the facts.

DELANY, J. COM. APP.— It would be impossible, within any reasonable limits, to discuss in detail the numerous assignments of error presented in the record, nor is such a discussion at all necessary, as there are only two or three important questions to be determined in the case.

The first of these questions is, Did the court err in overruling those exceptions of the defendant which presented the defense of limitation against the amended original petition?

The pleading last named was filed on the 30th of April, 1883.

The defendant insists that it set up a new cause of action, which was barred by the limitation of two years.

If the amended petition set up a new cause of action, the ruling of the court was error; but if it did not, then the ruling should be sustained.

Our opinion is that the amendment does not set up a new cause of action.

In the original petition the charges of gross negligence, wrong, etc., are all made directly against the company. Nothing is said about the acts of the agents. These charges, allegations, etc., are ample to sustain a claim for all the actual damage resulting directly from the acts complained of.

In his prayer he asked for $100 actual damages, and for $10,000 as exemplary damages. There was also a prayer for general relief.

But the character of the cause of action is to be determined not merely by the prayer for relief, but by the facts set forth as the basis of recovery. If these are substantially the same in both petitions, then the latter does not set up a new cause of action, although it may change the form of the prayer and ask a larger measure of relief. Ball *v.* Britton, 58 Tex., 57; Lee *v.* Boutwell, 44 Tex., 151.

The next, and only remaining, question of importance is, whether the verdict is sustained by the evidence.

We may admit that the negligence of the defendant is fully established, and that damage to the plaintiff is proven. But that is not sufficient.

In a suit like this, the plaintiff ought to show, not merely that he has been injured by the wrongful act or omission of the defendant, but it should be made to appear, with some reasonable degree of certainty, how much he has been injured.

Actual damages are given as compensation, and unless there is some criterion furnished by which the jury can reasonably estimate the proper amount of compensation, their verdict must be, to some extent, conjectural.

The evidence clearly shows that the protest of a merchant's paper, under the circumstances of this case, is no light thing. It is certain to cause pecuniary loss, trouble, anxiety and apprehension, and it may bring disaster and ruin. All these, except the last, it brought upon the plaintiff.

He was doing a grocery business amounting to $750,000 a year; he owed a large amount of money, and his business relations extended to the principal cities of the country.

When the news of the protest came he was filled with apprehension, lest his creditors should rush upon him, the consequences of which he could hardly even conjecture. He dared not send out an order for goods for fear it would be refused.

He was compelled to cut down his stock and partially suspend

his business for thirty days, until his creditors were reassured and his business relations re-established.

He showed that he had been greatly damaged, but he could not tell how much.

This is the sum and substance of the testimony as to the actual damages sustained by the plaintiff, and the jury assessed the actual damages at $6,000.

Now the question arises, by what process did the jury arrive at that particular sum? Might they not, with equal propriety, have found a verdict for almost any other sum — say two, three, four, five, or seven thousand?

The objection to this evidence is that it is too vague.

We do not mean to say that the facts should be stated with the minuteness of an account, but the evidence should furnish a basis upon which the jury could approximate with reasonable certainty the actual damage sustained. For instance, the plaintiff could have given some estimate of the extent to which his stock was cut down and his trade diminished during that month; some idea of his average profits per month — in a word, the facts upon which he based his claim to actual damages.

Upon the question of exemplary damages we do not think proper to make suggestions.

The minor questions presented in the record are not of sufficient importance to require discussion.

Our opinion is that the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted December 12, 1884.]